UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

W. DAVIS C. COCHRAN, JR., et al.,

        Plaintiffs,

-v-                                                                                 Case No. 3-:04-CV-024

VENDMASTERS, INC., et al.,

                                                            Judge Thomas M. Rose

        Defendants.

**ENTRY AND ORDER GRANTING VENDMASTERS AND ADVANCE'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. #52); DISMISSING COUNTS ONE AND THREE OF COCHRANS' VERIFIED COMPLAINT WITH PREJUDICE; DISMISSING COUNTS TWO AND FOUR OF COCHRANS' VERIFIED COMPLAINT AND VENDMASTERS' COUNTERCLAIM WITHOUT PREJUDICE AND TERMINATING THIS CASE**

      This dispute arises from an attempt by Plaintiffs W. Davis Cochran, Jr. and Robert E. Cochran, Sr. (the "Cochrans") to establish a business venture together involving vending machines. In an effort to establish the business venture, the Cochrans allegedly contacted, among others, Defendants VendMasters, Inc. ("VendMasters"); Advance Placement Service, Inc. ("Advance"); Vend Star, Inc.; VDSR Associates, Inc.; and Floyd Perkins ("Perkins"). Several John Does are also named as Defendants but they have yet to be identified.

      The Cochrans brought a four-count verified Complaint. Count One is for violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1962 et seq. Count Two is a state-law claim for making false representations. Count Three is for violation of the Ohio Pattern of Corrupt Activities ("PCA") Act, Ohio Rev. Code §2923.31 et seq. and Count

Four is for violation of Ohio Rev. Code § 1703.30 which prohibits the transaction of business in Ohio by officers of unlicensed corporations. Federal question jurisdiction exists because Count One is a claim brought pursuant to federal law. VendMasters counterclaimed alleging that the Cochrans have engaged in frivolous conduct in violation of Ohio Rev. Code § 2323.51.[1] (Doc. #33.)

Plaintiffs have voluntarily dismissed Defendants Vend Star, Inc. and VDSR Associates, Inc. (Doc. #24.) Defendant Perkins was served via publication and the Clerk has entered default against Perkins for not filing an answer. Thus, the remaining defendants are VendMasters and Advance. VendMasters is also a counterclaimant.

Now before the Court is Advance and VendMaster's Motion for Partial Summary Judgment. (Doc. #52.) This motion is now fully briefed and ripe for decision. A brief factual background will first be set forth followed by the standard of review and an analysis of the motion.

## I. FACTUAL BACKGROUND

The facts set forth in the background are, as they must be, viewed in a light most favorable to the Cochrans, the non-movants in this instance. However, the Cochrans have submitted unsworn declarations that do not comply with the requirements for unsworn declarations set forth in 28 U.S.C. § 1746 in that they do not conclude, as required, with the statement: "I declare under penalty of perjury that the foregoing is true and correct. Executed on

---

[1] Advance's Answer also includes a counterclaim but the title of document does not indicate that it includes a counterclaim. (Doc. #16.) The Cochrans have not responded to the counterclaim imbedded in Advance's Answer.

(date)(signature)." Therefore, the unsworn declarations cannot be considered as Rule 56 evidence.

Turning to the Rule 56 evidence, in early 2003, the Cochrans, who are brothers, became interested in starting a vending machine business in Dayton, Ohio. (D.Cochran Dep. 18-19 3/7/06.) The Cochrans planned to enter into a partnership with Davis Cochran supplying the money and Robert Cochran supplying the labor. ( D. Cochran Dep. 25.)

In pursuit of their desire to enter the vending machine business, the Cochrans searched for vending machine advertisements in newspapers and magazines. (R. Cochran Dep. 13 3/7/06; D. Cochran Dep. 19-22.) After reviewing classified advertisements in the Dayton Daily News and calling potential vendors, the Cochrans decided that VendMasters offered the best business opportunity. (D. Cochran Dep. 28-29, 35-36; R. Cochran Dep. 17.)

VendMasters is a Nevada for profit corporation with its principal place of business in Englewood, California. (Richard Black Aff. ¶ 1 7/10/06.) VendMasters' business is selling vending machines. (Id.) VendMasters advertises business opportunities in newspapers around the country and responds to inquiries by providing information packets that include a Business Opportunity Disclosure Statement. (Id. ¶ 2.)

VendMasters does not provide location services for vending machines but, in response to inquiries, will identify vending location companies or refer inquiries to a National Business Opportunities Bureau listing of vending location companies. (Id. ¶ 3.)

Robert Cochran then contacted and received literature from VendMasters via U.S. Mail. (R. Cochran Dep. 18.) Robert forwarded the VendMaster information to Davis Cochran. (R. Cochran Dep. 18-19.)

In addition to forwarding VendMasters' literature to Davis, Robert contacted VendMasters. (R. Cochran Dep. 19-20.) In one of those conversations, VendMaster employee Vince Collins told Robert that VendMasters sold the vending machines and that Advance could locate and place the vending machines. (Id. 30.) VendMasters offered to sell the Cochran's sixty vending machines for $10, 995. (Id. 21.)

Advance is an Illinois for profit corporation that provides locating services for vending equipment, racks and displays. (Jay Baird Aff. ¶ 1 7/7/06.) Advance works with professional locators that secure locations for vending machines throughout the United States. (Id. ¶ 3.)

Davis Cochran then contacted Jay Baird, Advance's President. (D. Cochran Dep. 44-45.) Mr. Baird told Davis that Advance would charge $1,500 for placing thirty vending machines and that an initial deposit of $750 was required along with a signed Advance Customer Service Agreement. (Id. 46; Baird Aff. ¶ 4.)

Davis Cochran sent a signed Advance Customer Service Agreement to Baird along with the initial $750. (Baird Aff. ¶ 4.) Baird then identified Perkins to Davis Cochran as a professional locator that Advance had worked with in the past. (Id.)

In June of 2003, the Cochrans met with Perkins. (D. Cochran Dep. 60-61.) Perkins explained that his role was to contact buildings and businesses in the Dayton area regarding installing vending machines. (Id. 62-63.) Perkins also told the Cochrans that they needed to have the vending machines ready to install the same day or the day after the contacts were made. (Id. 62.) Perkins also offered to provide the vending machines. (Id. 62-63.) At the time, Davis Cochran thought that Perkins would be getting the vending machines from Jay Baird at Advance. (Id. 72-73.)

The Cochrans then determined to purchase the vending machines from Perkins. (Id. 73.) They gave Perkins a total of three checks in the amounts of $750, $6,000 and $5,393. (Id. 73-74; 103.) The latter two were for purchase of the vending machines. (Id.)

The checks were made payable to Perkins. (Id. 72-73.) Although Davis thought he was purchasing the vending machines from Advance, he did not ask why the checks were being made payable to Perkins personally instead of Advance. (Id. 73-74.)

The Cochrans never saw Perkins after the June 2003 meeting but spoke with him on the phone numerous times. (Id. 75.) When asked about delivery of the vending machines, Perkins would make excuses. (D. Cochran Dep. 77-78; R. Cochran Dep. 65-66.) The Cochrans agreed to meet Perkins on three or four occasions at Robert Cochran's home in Dayton to accept delivery of the vending machines, but Perkins never showed up nor did the vending machines. (D. Cochran Dep. 81-82.)

While the Cochrans were waiting for the vending machines from Perkins, they contacted Jay Baird at Advance to complain that the Customer Agreement was not being fulfilled. (D. Cochran Dep. 54-55.) Baird became upset and told the Cochrans that they should not have given Perkins the money. (Id. 54-58.) Baird also said he would take care of the placements for additional money, an offer that the Cochrans declined. (Id. 56.)

Having paid their money and received no locations or vending machines, the Cochrans filed this action. The analysis next turns to the standard of review.

## II. STANDARD OF REVIEW

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and the associated caselaw. Rule 56 provides that summary

judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving

party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, §2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not …obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c).

Further, statements in a verified complaint, like the one filed by the Cochrans in this action, may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 516 n.13 (6th Cir. 2000). However, statements in a verified complaint, like affidavit statements, must be based on personal knowledge." *Id.* Moreover, "an affidavit not based on personal knowledge does not create issue of fact precluding summary judgment." *Erickson v. Farmland Indus.*, 271 F.3d 718, 728 (8th Cir. 2001). Therefore,

a statement in a verified complaint that is not based upon personal knowledge does not create an issue of fact precluding summary judgment.

The verified Complaint filed in this matter includes claims brought pursuant to Ohio law. In reviewing an Ohio claim, this Court must apply the law of Ohio, as interpreted by the Supreme Court of Ohio. *Northland Ins. Co. v. Guardsman Prods. Inc.*, 141 F.3d 612, 617 (6th Cir. 1998). Specifically, this Court must apply the substantive law of Ohio "'in accordance with the then-controlling decision of the highest court of the state.'" *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001) (quoting *Pedigo v. UNUM Life Ins. Co.*, 145 F.3d 804, 808 (6th Cir. 1998)). Also, to the extent that the highest court in Ohio has not addressed the issue presented, this Court must anticipate how Ohio's highest court would rule. *Id.* (quoting *Bailey Farms. Inc. v. NOR-AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir. 1994)). Having set forth the standard of review, the analysis turns to the motion for partial summary judgment.

### III. ANALYSIS OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants Advance and VendMasters seek summary judgment on Count One and Count Three of Cochrans' Complaint. Count One is for violation of the federal RICO Act and Count Three is for violation of the Ohio PCA Act.

The PCA Act is adopted directly from the RICO Act. *Universal Coach, Inc. v. New York City Transit Authority*, 629 N.E.2d 28, 32 (Ohio Ct. App. 1993)(citing *Cincinnati Gas & Electric Co. v. General Electric Co.*, 656 F.Supp. 49 (S.D.Ohio 1986)). As a result, Ohio courts look to federal case law applying the RICO Act when analyzing claims brought under the PCA Act. *Id.; DeNune v. Consolidated Capital of North America, Inc.*, 288 F.Supp.2d 844 (N.D.Ohio 2003)*; U.S. Demolition & Contracting, Inc. v. O'Rourke Construction Co.*, 640 N.E.2d 235, 240 (Ohio

Ct. App. 1994). Therefore, both Counts One and Three of Plaintiffs' Complaint will be analyzed together and under federal RICO law.

Congress's goal when enacting RICO was to protect legitimate businesses from infiltration by organized crime. *Schmidt v. Fleet Bank*, 16 F.Supp.2d 340, 346 (S.D.N.Y. 1998). RICO, initially a criminal statute, was supplemented by Congress to permit civil enforcement of its provisions. *Goren v. New Vision International, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998). A civil RICO claim is an "unusually potent weapon" so a court must ensure that RICO's severe penalties are limited to enterprises consisting of more than simple conspiracies. *Schmidt*, 16 F.Supp.2d at 346.

The RICO statute identifies several prohibited activities. *Id.* Two specific RICO provisions are relevant to this matter. Section 1962(c) prohibits any person associated with any enterprise engaged in activities which affect interstate or foreign commerce from conducting such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt. 18 U.S.C. § 1962(c). Section 1962(d) prohibits any person from conspiring to violate any provision of RICO, including that found in § 1962(c). 18 U.S.C. § 1962(d).

### A. Section 1962(c) Claim[2]

The elements of a RICO claim brought pursuant to 18 U.S.C. § 1962(c) are: (1) conduct (2) of an enterprise (3) through a pattern of racketeering activity. *Goren v. New Vision International, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998). The plaintiff must also show that an injury

---

[2] The Cochrans argue that this Court has already ruled by entry of default judgment that Perkins violated the RICO Act. However, default judgment has not been entered against Perkins. An Entry of Default has been made which only determines that Perkins was served with the verified Complaint and failed to answer.

to business or property occurred as a result of the violation. *VanDenBroek v. Commonpoint Mortgage Co.*, 210 F.3d 696, 699 (6th Cir. 200). Each of these elements will be analyzed with regard to Cochrans' Section 1962(c) claim.

### 1. The Conduct Requirement

To satisfy the "conduct" element, a plaintiff must show that the defendant "participated in the operation or management of the enterprise itself" and that the defendant played "some part in directing the enterprise's affairs. *Goren*, 156 F.3d at 727 (citing *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993)). Therefore, "[s]imply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable as a result." *Schmidt*, 16 F.Supp.2d at 346 (*citing LaSalle National Bank v. Duff & Phelps Credit Rating Co.*, 951 F.Supp. 1071, 1090 (S.D.N.Y. 1996)).

There is a substantial difference between actual control over an enterprise and association with an enterprise, and only actual control satisfies the conduct requirement. *Id.* (citing *Department of Economic Development v. Arthur Anderson & Co.*, 924 F.Supp. 449, 466 (S.D.N.Y. 1996)). Mere participation in the activities of the enterprise or performing services for an enterprise is not sufficient. *Goren,* 156 F.3d at 727-28. The Defendant must participate in the operation or management of the enterprise. *Id.* at 727.

The Cochrans identify an enterprise composed of VendMasters, Advance Placement and Perkins. They also have presented facts alleging that VendMasters, Advance and Perkins participated in certain activities regarding the supply and location of vending machines.

In response, Advance presents evidence that it is not "affiliated or otherwise connected with any company in the business of selling vending machines" and does not "pay or otherwise

provide any form of compensation for referrals from companies that sell vending machines." (Baird Aff. ¶ 2.) Also, VendMasters presents evidence that it has no business affiliation or relationship with Advance, or any company that provides location services, receives no payment or compensation of any kind for referrals, and has no financial interest in whether or not any prospective purchaser of vending machines uses the services of any locating company. (Black Aff. ¶ 4.)

While the Cochrans have presented evidence that VendMasters and Advance may have provided services that benefitted an alleged enterprise regarding the sale and location of vending machines, they have presented no evidence that either VendMasters or Advance participated in the operation or management of an enterprise consisting of VendMasters, Advance and Perkins or played some part in directing the affairs of such an enterprise. Therefore, there is no genuine issue of fact regarding the conduct requirement. It has not been satisfied.

### 2. The Enterprise Requirement

An enterprise is a "group of persons associated together for a common purpose of engaging in a course of conduct." *VanDenBroek*, 210 F.3d at 699(citing *United States v. Turkette*, 452 U.S. 576 (1981)). An enterprise may be a legal entity or an association in fact. *Schmidt*, 16 F.Supp.2d at 349. The "hallmark" of a RICO enterprise is its ability to exist apart from the pattern of wrongdoing. *VanDenBroek*, 210 F.3d at 699.

An association in fact enterprise, which is alleged in this case, can be proved by showing (1) that the associated persons formed an ongoing organization, formal or informal; (2) that they functioned as a continuing unit; and (3) that the organization was separate from the pattern of racketeering activity in which it engaged. *VanDenBroek*, 210 F.3d at 699. Further, these

elements are interpreted to require a certain amount of organizational structure which eliminates simple conspiracies from the RICO act. *Id.* "Continuity of structure exists where there is an organizational pattern or system of authority that provides a mechanism for directing the group's affairs on a continuing, rather than an ad hoc, basis." *United States v. Tocco*, 200 F.3d 401, 425 (6th Cir. 2000)(quoting *United States v. Kragness*, 830 F.2d 842, 856 (8th Cir. 1987)), *cert. denied*, 539 U.S. 926 (2003). Each of the elements necessary to show an association in fact will next be analyzed with regard to Cochrans' allegations.

        a. Whether the Associated Persons Formed an Ongoing Organization

The Cochrans have identified evidence that Vendmasters is in the business of selling vending machines and that, when called, VendMasters identified Advance to the Cochrans as a company that could provided location services for vending machines. (Black Aff. ¶ 4.) The Cochrans have also identified evidence that Advance entered into an agreement with them to find locations for vending machines and referred them to Perkins for execution of the agreement. (Baird Aff. ¶ 4.) Therefore, the Cochrans have presented evidence of an ongoing, informal organization.

        b. Whether the Associated Persons Functioned as a Continuing Unit

The Cochrans have also identified evidence that VendMasters, Advance and Perkins functioned as a continuing unit. VendMasters is in the business of selling vending machines and regularly refers callers to locating services including Advance. (Black Aff. ¶¶ 1, 4.) Advance is in the business of finding locations for vending machines and regularly refers those who sign their Customer Agreements to Perkins and other "locators." (Baird Aff. ¶¶ 1, 4.) Therefore, the

Cochrans have presented evidence that the informal organization composed of VendMasters, Advance and Perkins functioned as a continuing unit.

### c. Whether the Organization Was Separate From the Pattern of Racketeering Activity In Which It Engaged

The Cochrans have presented evidence that VendMasters, Advance and Perkins engaged in a pattern of activity regarding locating and selling vending machines. However, VendMasters and Advance have presented evidence that each of them is not affiliated or otherwise connected with other companies. (Baird Aff. ¶ 2; Black Aff. ¶ 4.) In response, the Cochrans have presented no evidence that an organization composed of VendMasters, Advance and Perkins existed separately from the pattern of activity.

In sum, the Cochrans have shown that VendMasters, Advance and Perkins engaged in a ongoing, informal organization involving the sale and location of vending machines and that this informal organization was ongoing. However, they have presented no Rule 56 evidence that the informal organization involving VendMasters, Advance and Perkins existed separate from their activities regarding the sale and location of vending machines. Therefore, the Cochrans have not presented evidence that satisfies the enterprise requirement.

### 3. The Pattern of Racketeering Activity Requirement

"A pattern of racketeering activity consists, at a minimum, of two predicate acts of racketeering committed within a ten-year time period." *Goren*, 156 F.3d at 728. However, while two acts are necessary, they may not be sufficient. *Cincinnati Gas & Electric*, 656 F.Supp. at 78. The target of the RICO Act is not sporadic activity. *Id.*

The predicate acts are violations of a list of criminal laws that are specified in the RICO statute. *Goren*, 156 F.3d at 728. Examples are acts or threats involving murder, kidnapping,

-13-

gambling, arson, robbery, bribery and extortion that are chargeable under state law and punishable by imprisonment for more than one year. 18 U.S.C.A. § 1961(a)(A). Two or more predicate acts within a ten-year period must be shown to sustain a RICO claim. *Britt v. Fox*, 110 Fed.Appx. 627, 628 (6th Cir. 2004), *cert. denied*, 543 U.S. 1026 (2004).

A civil RICO action does not require that there be a prior criminal conviction for the conduct that forms the predicate acts. *Central Distributors of Beer, Inc. v. Conn*, 5 F.3d 181, 183 (6th Cir. 1993), *cert. denied*, 512 U.S. 1207 (1994). Yet, the conduct supporting a civil RICO action must be indictable. *Id.*

A pattern of racketeering can be established by showing that the predicate acts are related and that they amount to or pose a threat of continuing criminal activity. *United States v. Busacca*, 936 F.2d 232, 237 (6th Cir. 1991), *cert. denied*, 502 U.S. 985 (1991). Thus, there are two elements of a pattern of racketeering activity which have come to be known as "relatedness" and "continuity." *Id.*

"Continuity" is a temporal concept that refers to either a closed period of repeated conduct or to past conduct that, by its nature, projects into the future with a threat of repetition. *Id.* A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. *Id.* However, predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy the "continuity" requirement. *Id.* The threat of continued criminal activity is a fact specific concept that may be established by showing that the related predicates involve a distinct threat of long term racketeering activity, either implicit or explicit, or by showing that the predicate acts are a part of an ongoing entity's regular way of doing business. *Id.* at 238.

Rule 9(b) is applicable to the allegations of fraud as predicate acts in a civil RICO complaint. *Goren*, 156 F.3d at 726. Pursuant to Rule 9(b), the circumstances constituting fraud are to be stated with particularity. *VanDenBroek*, 210 F.3d at 701. Further, a fraud claim requires that the plaintiff show that the defendant made a material misrepresentation of fact that was calculated or intended to deceive persons of reasonable prudence and comprehension, and must also show that plaintiff in fact relied upon that material misrepresentation. *Id.*

Turning to this case, VendMasters and Advance present evidence that they have never been charged with any violations of federal or state law and that they did not make any false representations to the Cochrans. The Cochrans respond by identifying seven alleged predicate acts committed by VendMasters, Advance and Perkins.

### a. Predicate Acts

The first predicate act identified by the Cochrans is an allegation that they paid $750 to Advance, that Advance retained their money and that they never received anything of value. This, according to the Cochrans, is a violation of Ohio's criminal code, Ohio Rev Code § 2913.02.

Section 2913.02 is Ohio's criminal theft statute and is a subset of Ohio's theft and fraud law. It prohibits a person from knowingly obtaining control over either the property or service of another person without the express or implied consent of the other person or by deception.

Since the Cochrans have presented Rule 56 evidence, with particularity, that they paid $750 to Advance and never received anything of value, they arguably have shown that Advance may be liable for an Ohio theft claim. However, while the Cochrans identify evidence that, for

purposes of summary judgment, satisfies an Ohio theft claim, they have not shown that an Ohio theft claim is a RICO predicate act.

The second predicate act identified by the Cochrans is an allegation that they paid money to Perkins as the agent for Advance and VendMasters and that they did not receive anything for the money. This, also, according to the Cochrans is a violation of Ohio Rev Code § 2913.02.

Since the Cochrans have presented Rule 56 evidence, with particularity, that they paid money to Perkins and never received anything of value, they arguably have shown that Perkins may have violated Ohio's theft law. However, while the Cochrans have identified evidence that Perkins may have violated Ohio's theft law, they have not shown that an Ohio theft claim is a RICO predicate act. Further, this Court need not and has not addressed whether Perkins was an agent for either VendMasters or Advance.

The third and fourth predicate acts alleged by the Cochrans are for mail fraud. The elements of a mail fraud claim are: (1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud. *Central Distributors*, 5 F.3d at 184.

In response to this alleged predicate activity, VendMasters and Advance again argue that they have never violated a federal or state law. In response, the Cochrans identify evidence that they contacted VendMasters and Advance and obtained literature from both of them via the U.S. Mail. Further they present evidence that it was this literature that ultimately led them to provide a signed Customer Agreement along with $750 to Advance, again, using the U.S. Mail. Finally, they present evidence that they have never received anything of value from Advance in return.

The alleged scheme to defraud was the alleged scheme by VendMasters, Advance, and Perkins to obtain money from the Cochrans for providing vending machines and locations. As a part of this alleged scheme, both VendMasters and Advance used the U.S. Mail. As to intent, the Cochrans alleged that VendMasters, Advance and Perkins intended to defraud them and case-dispositive findings of intent are generally the province of the finder-of-fact. Therefore, there are genuine issues of material fact as to whether VendMasters and Advance committed mail fraud within a ten-year period.

The fifth, sixth and seventh predicate acts involve claims against Advance for failing to identify vending locations. These claims, according to Advance, were filed in Pennsylvania, Michigan and Indiana and do not allege criminal violations. However, allegations of criminal violations is not the standard. The standard is whether the predicate acts are indictable. Yet, the Cochrans have not shown that these three claims against Advance are RICO predicate acts.

### b. Summary of Pattern of Racketeering Activity

The Cochrans have presented evidence creating genuine issues of material fact, with particularity, as to whether VendMasters, Advance and Perkins committed two predicate acts as defined by the RICO Act within a ten-year period. They have also presented evidence creating genuine issues of material fact that these predicate acts were related to providing and locating vending machines and that, the continuing relationship between VendMasters and Advance poses a threat of continuing criminal activity. Therefore, the Cochrans have presented evidence that arguably satisfies the pattern of racketeering activity requirement.

### 4. Conclusion Regarding Section 1962(c) Claim

The Cochrans have not presented evidence to create genuine issues of material fact regarding two of the three elements of a RICO § 1962(d) claim. While the Cochrans have presented evidence creating a genuine issue of material fact as to whether VendMasters and Advance, along with Perkins, were engaged in a pattern of racketeering activity, they have presented no evidence that VendMasters and Advance were a part of a racketeering enterprise or that they participated in the operation or management of an enterprise or played some part in directing the affairs of an such enterprise.

### B. Section 1962(d) Claim

The Cochrans also alleged that VendMasters and Advance conspired to violate the RICO Act. Section 1962(d) makes actionable a conspiracy to violate the RICO statute. Section 1962(d)'s target is the agreement to violate RICO's substantive provisions and not the actual violations themselves. *Goren*, 156 F.3d at 731. Liability arises from an agreement to participate in an endeavor which, if completed, would constitute a violation of the substantive statute. *Id.* at 732. Thus, to show a violation of § 1962(d), a plaintiff must show (1) that each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that each defendant further agreed that someone would commit as least two predicate acts to accomplish those goals. *Id.* at 732. However, there can be no conspiracy without a substantive RICO violation. *Schmidt*, 16 F.Supp.2d at 353 (citing *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996), *cert. denied*, 522 U.S. 809 (1997)).

In this case, the Cochrans have not presented evidence satisfying all of the elements of a substantive RICO violation. Therefore, there can be no conspiracy.

## IV. SUMMARY

VendMasters and Advance's Motion for Partial Summary Judgment is GRANTED. The Cochrans have not presented evidence satisfying two of the three elements of a RICO claim. Also, since the Cochrans have not presented evidence of a substantive RICO violation, there can be no conspiracy to violate the RICO Act. Therefore, there are no genuine issues of material fact and VendMasters and Advance are entitled to judgment as a matter of law on Count One of Cochrans' Complaint for violation of the federal RICO Act and Count Three of Cochrans' Complaint for violation of Ohio's PCA Act. Count One and Count Three are DISMISSED.

The basis for subject matter jurisdiction in this case was the RICO claim found in Count One. Since Count One has been dismissed, this Court no longer has original subject matter jurisdiction. Further, this Court declines to exercise supplemental jurisdiction over the remaining claims. See 28 U.S.C.A. § 1367(c)(3).

Counts Two and Four of Cochrans' verified Complaint and VendMasters' Counterclaim are dismissed and have not been adjudicated on their merits. Therefore, they are dismissed without prejudice.[3] The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio, this Twentieth day of September, 2006.

                     s/Thomas M. Rose

                     _____
                     THOMAS M. ROSE
                     UNITED STATES DISTRICT JUDGE

Copies furnished to:

---

[3]Both parties request that these claims be dismissed without prejudice.

Counsel of Record